# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA,

                                                                          CASE NO. 8:18-cr-509-CEH-TGW

v.

JOSE LUIS PINARGOTE-BAQUERIZO, et al.

_____

## JOSE LUIS PINARGOTE-BAQUERIZO'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE FROM THE OTHERWISE APPLICABLE GUIDELINE RANGE

The defendant, Jose Luis Pinargote-Baquerizo, by and through the undersigned counsel, hereby files his sentencing memorandum to assist the Court in fashioning an appropriate sentence in this case. In this memorandum, the defendant will address some of the outstanding objections to the Presentence Report (Doc. 142) (Hereafter "PSR") and the application of the United States Sentencing Guidelines and move the Court for a downward variance from the otherwise applicable advisory guideline range.

### *Background*

Mr. Pinargote-Baquerizois a 37-year-old man from Ecuador. On October 30, 2018, he was charged in a two-count Indictment in the above case. (Doc. 1). On December 29, 2020, Mr. Pinargote-Baquerizo pleaded guilty to Count two of the indictment which alleged a conspiracy to possess with intent to distribute five

kilograms or more of cocaine knowing while aboard a vessel subject to the jurisdiction of the United States, in violation of U.S.C. §§ 70503(a) and 70506(a) and (b). This Court accepted his guilty plea on August 24, 2022. (Doc. 127).

## I.  Outstanding Objections to Presentence Report

*Relevant conduct*

The PSR improperly includes allegations ¶¶'s 21 and 22 as relevant conduct in the case. U.S.S.G §1B1.3 defines relevant conduct and states:

> (a) <u>Chapters Two (Offense Conduct)</u> and <u>Three (Adjustments)</u>. Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in <u>Chapter Two</u>, and (iv) adjustments in <u>Chapter Three</u>, shall be determined on the basis of the following:
>
> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—
>
> (i) within the scope of the jointly undertaken criminal activity,
>
> (ii) in furtherance of that criminal activity, and
>
> (iii) reasonably foreseeable in connection with that criminal activity;
>
> **that occurred during the commission of the offense of conviction**, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(Emphasis added).

The offense of conviction is a cocaine conspiracy ending in 2018. The PSR adds two unrelated criminal accusations in ¶¶'s 22 and 23. (Doc. 142). These alleged events allegedly took place in August of 2019 (Ten months after the indictment) and February of 2022 (over three years after indictment). These events did not happen during the offense of conviction and should not be in the PSR nor should the additional quantity of drugs be reflected in ¶24 of the PSR. Incredibly, in paragraph 31 the PSR also scores a two-level enhancement for use of a submersible or semi-submersible pursuant to U.S.S.G. §2D1.1(b)(3) based solely on a Colombian press release indicating it occurred over three years beyond the date of Indictment. (Doc. 142 P. 22). The government and defense agree this is not relevant conduct and the enhancement does not apply. (Doc. 142 P. 23 and P. 24, 25).

*Objection to Role Enhancement*

Mr. Pinargote-Baquerizo objects to the 3 level role enhancement in ¶33 of the PSR for being a manager or supervisor under U.S.S.G. § 3B1.1(b). (Doc. 142 ¶33). U.S.S.G. §3B1.1 states:

> Based on the defendant's role in the offense, increase the offense level as follows:
>
> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels.
>
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by **3** levels

> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by **2** levels.

The Application Note 2 to §1B1.1 states:

> 2. To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

Mr. Pinargote-Baquerizo did not manage or supervise any other participant in the offense. Mr. Pinargote-Baquerizo acted as a facilitator by introducing mariners who wanted to earn money to a drug trafficking organization. The mariners were paid by the drug trafficking organization. For the introduction, Mr. Pinargote-Baquerizo was paid by the mariners out of the fee the mariners were paid for the trip.

The Addendum to the PSR incorrectly analogizes *U.S. v. Jiminez*, 224 F. 3d 1243 (11th Cir. 2000). In *U.S. v. Jiminez*, 224 F. 3d 1243 (11th Cir. 2000) the defendant appeal his role enhancement. In *Jimenez* two witnesses testified that Sims had to consult with Jimenez before agreeing to sell drugs, and some of the taped conversations also indicated that Sims would consult with Jimenez (who could be heard in the background) when discussing drug transactions on the telephone. *Id.* at 1251. One of these witnesses, Lucy Hodge Parker testified that she bought methamphetamine from Sims and resold it for a profit, but only after

Jimenez gave Sims the initial permission to sell. *Id*. Another witness, Joseph Parker testified that he was asked to follow Sims (as a guard) when she would deliver methamphetamine to customers, which she could only do after Jimenez gave her permission. *Id*. The *Jiminez* court found the trial court was not clearly erroneous in applying a two level enhancement for Jimenez's supervision of the drug sales drug after recognizing his direction of Sims throughout the conspiracy.

In describing Mr. Pinargote-Baquerizo's "supervision" the PSR addendum states:

> In this case the defendant served as a supervisor as he assisted both recruiters and the drug trafficking organization in facilitating transportation, lodging, and payments to mariners on drug smuggling ventures. The defendant's conduct involved meeting with mariners after they were recruited and looked after them until they were picked up by the drug trafficking organization to be taken to the departure point. In addition to these duties, the defendant assessed fees to the mariners that were deducted from their advanced payments.

Doc. 142 P. 27.

Mr. Pinargote-Baquerizo rode on buses with crewman showing them the location they needed to go to meet the drug trafficking individuals he was going to be paid for introducing. Mr. Pinargote-Baquerizo worked for the crewman and was paid a fee by the crewman. His job was to introduce them to the drug trafficking organization. Once the introduction was made and Mr. Pinargote-Baquerizo received his fee, he was no longer involved with the crew members or any shipment of drugs. Mr. Pinargote-Baquerizo actions did not rise to the level of manager or supervisor any members of the conspiracy. Without the role enhancement

pursuant to U.S.S.G. §1B1.1(b) Mr. Pinargote-Baquerizo qualifies for the "safety valve" reduction pursuant to U.S.S.G. § 2D1.1(a)(18) and U.S.S.G §5C1.2. As a result Mr. Pinargote-Baquerizo's Total Offense Level should be 33 criminal history category I corresponding to an advisory guideline range of 135-168 months.

## II. Motion for a Downward Variance from the Advisory Guidelines Range

Mr. Pinargote-Baquerizo requests a variance from the otherwise applicable advisory guideline range based on his personal history and the need to avoid unwarranted sentencing disparity. He will briefly address the legal basis for a variance and the specific facts pertaining to him that justify a variance.

*Variance legal basis*

The Eleventh Circuit reemphasized the wide discretion district courts enjoy in determining whether variances are appropriate. *See United States v. Rosales-Bruno,* 789 F. 3d 1249 (11th Cir. 2015). Although district courts must consider all available § 3553(a) factors, they need not give all the factors equal weight. *Id. at 1254.* (Citation omitted). "Instead, the sentencing court 'is permitted to attach "great weight" to one factor over others.'" *Id., quoting Gall v. United States,* 552 U.S. 38, 57 (2007). Likewise, although district courts must consider the advisory guidelines range, "it is only one of a dozen or so factors that the court must take into account." *Id.* at 20 (citation omitted). Moreover, "The Supreme Court has been clear that "[t]he Guidelines are not the only consideration…. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem

appropriate, the district court should then consider all of the §3553 factors to determine whether they support the sentence requested by a party.'" *Id., quoting Gall,* 552 U. S. at 50. In fact, "[n]othing requires a sentencing court to give the advisory guidelines range as much weight as it gives any other § 3553(a) factor or combination of factors." *Id.*

The particularized facts about Mr. Pinargote-Baquerizo warrant a variance from the otherwise applicable guideline range. Mr. Pinargote-Baquerizo and his family live in La Libertad, Ecuador. As a child his parents were poor and worked away from home for days on end. (Doc. 142 P. 10,11). Mr. Pinargote-Baquerizo spent a great deal of time alone because his parents were working out of town overnight. Prior to his arrest he was living with his girlfriend and their 4 children in Aconcito, Ecuador. (Doc. 142 P. 12) The residence (which is the same home he grew up in) is made of sugar cane and has dirt floors. (Doc.142 P. 12). To support his family the defendant worked as a fisherman and his income varied. Some trips paid well, but often the trips were unsuccessful and he struggled to make ends meet for his family. Unfortunately, he became involved in this conspiracy to support his family.

## *Conclusion*

Mr. Pinargote-Baquerizois was a hard-working person from Ecuador with a very disadvantaged background. At the sentencing hearing, the defendant will request the Court to vary from the otherwise applicable guideline range.

Respectfully submitted,

FARMER & FITZGERALD, P.A.

*Timothy J. Fitzgerald*
Timothy J. Fitzgerald, Esq.
FL Bar No. 0780618
800 W. De Leon St.
Tampa, FL 33606
(813) 228-0095
FAX (813) 224-0269
fflawpafedtjf@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original of the foregoing has been furnished by Cm/ecf on November 21, 2022 to the following:

AUSA David Pardo
Office of the U.S. Attorney
400 North Tampa Street